Thank you, Your Honor. May it please the Court, I'm Robert Weider. I'm here for the appellate along with my co-counsel, Mr. Bickwall, and Mr. Hal Frampton. This case presents the question of whether or not a court or an arbitrator should decide whether a sort of standard arbitration clause permits class arbitration. And the trial court, relying very heavily on the plurality opinion in Basel from the Supreme Court, stated this, and I think I'm quoting here, that question, the sort of who decides question, concerns the procedural arbitration mechanisms available to the Carsons, and accordingly the Court concludes that whether class-wide arbitration is permitted in the underlying arbitration agreement is a procedural matter to be determined by the arbitrator. So the trial court says this is all just merely procedural questions, and the whole idea about whether or not there should be class arbitration is merely a question of procedure. That is exactly the opposite of what the United States Supreme Court said in Stolt-Nelson and what this Court said in Central West Virginia Energy, which, Judge Gregory, I believe you were on that case. In Stolt-Nelson, the Court said, first of all, it says Basel has no precedential value on this question, and all of the hoopla that can come out of Basel, Stolt-Nelson is the very first case that comes out and says, no, no, no, there was no ruling on this question in Basel. And then the Court specifically says the notion that class arbitration is merely a question about the procedural mode is just wrong, and that's the majority in Stolt-Nelson rejecting an argument by the dissent in Stolt-Nelson, who said this is just merely a question about procedural mode. And this Court in Central West Virginia picked up on this notion and talked about Stolt-Nelson and made these following observations. That class arbitration did not fall within the Howsam category of procedural questions. Howsam is the principle case where it says if it's merely a procedure, then it's a question for the arbitrator. It's not a question of arbitrability. And that class arbitration is not a procedural matter because class arbitration, and this is, again, reaching back to Stolt-Nelson, wreaks fundamental changes in the arbitration. And so when you look at these cases and you realize that what the trial court said was because it's procedure is for the arbitrator, it's clear here that it's not under this Court's reading of Stolt-Nelson and Stolt-Nelson itself that it's not merely a question of procedure. And therefore it is not therefore for the arbitrator, which was the trial court's reasoning. It's procedure, therefore arbitrator. What you have to look at is this, the question of arbitrability. And it's really a question of whose claims are going to be arbitrated and what type of claims are going to be arbitrated. Those questions, whose claims and what type of claims, are what courts traditionally have viewed as arbitrability questions and ask of some very clear and unmistakable agreement to the contrary, that is for the court. Because it's a gateway issue. It's a preliminary decision that has to be made before you even get into starting with the arbitration. But in Stolt-Nelson, that was precisely the fact that these gateway questions had been assigned to the arbitrator. Right. So the court really didn't pronounce that it was definitively ruling that those were questions of arbitrability, although the signs seem to be fairly clear. No, Your Honor. And if I misspoke, I apologize. The U.S. Supreme Court has made it clear that Basel's not precedent and that they haven't ruled on it. And when you read all their opinions, they're very frustrated by the fact, it sounds like they're very frustrated by the fact that nobody's getting the issue to them because they say things, the only reason we can't reach this issue is because you guys misread Basel and sent it to the arbitrator. But you're correct in Stolt-Nelson. They said we can't reach the issue, we don't need to reach the issue, because the parties in a supplemental agreement sent that issue to the arbitrator. But clearly there is no U.S. Supreme Court decision specifically on the issue before the court today of who decides whether a classic class arbitration agreement is subject to class arbitration. And the Fourth Circuit precedent or case that you cited is an unpublished decision? No, sir, that is a published opinion. The plaintiffs rely on the Davis case. That was an unpublished opinion, but it's 2007. Importantly, it's before Stolt-Nelson. When Basel came out, everybody thought, almost universally, that Basel meant arbitrator decides, and if the agreement's silent, it's class arbitration almost automatically. That's what everybody thought it meant. And I think what the Supreme Court is trying to say in these post-Basel cases, no, no, no, no, no, no, we didn't decide the issue. And I think when I read these post-Basel Supreme Court cases, they're pretty clear about silence will never get you there. A silent agreement as a matter of FAA law cannot get you to class arbitration because it has to be something in the agreement itself. Because you have two presumptions working here, and the presumption is, if it's arbitrability, the presumption is it's for the court unless the parties agree otherwise, clearly and unmistakably. That's the presumption that's operating in the background. And the Supreme Court is saying, if it's purely silent, then you can't overcome the presumption that it's for the court. And so I think when you read the Third and Sixth Circuit cases that we've cited to you, Reid Elsevier and Opolinsky, they take to heart what the U.S. Supreme Court is saying in these post-Basel cases. And I've come to the correct conclusion, or I've submitted the conclusion that this court should come to. Adds some clear and unmistakable agreement to the contrary in the arbitration clause. Class arbitration is so- Does it have to be in the clause or can it be afterwards? For example, in this case, there's an indication that your clients moved to compel arbitration after the plaintiffs indicated that they were seeking or were going to seek class-wide arbitration. Why isn't that some notion of implicit consent to allow the arbitrator to decide the issue? First of all, let me respectfully correct one factual assertion you made. There was no indication they were going to seek class-wide arbitration. This case started in state court. Our immediate answer was, you should be in arbitration, not here, and you failed to comply with South Carolina's Right to Cure Act. The trial judge wants to deal with Right to Cure Act, so we kind of slugged it along for a couple of years with that. Somewhere along the lines, they moved to amend their complaint to make class allegations in their complaint. Their case did not start as a class case. It started as an individual case. They moved to amend to add class allegations, but it was a very finite class. There were roughly 125- Carlson was one of them. Carlson then made a motion to sort of sweep all of those up and make a class of 140. I'm just using 140 as the number. And the court granted that motion. We then made our motion to compel arbitration after we'd worked through the Right to Cure Act stuff. Our motion was based solely on the Carlson. It had nothing to do with the class. It had only been alleged, never been certified. There wasn't even a motion to certify that class ever filed in the case. We made our motion to compel. The trial judge denied it. We appealed it. The Court of Appeals reversed and sent it back down and said the Carlsons must arbitrate their case. At some point, and I think it was just before or just after we filed our motion to compel, the Carlsons made a second motion to amend to allege a class of 2,000, which is kind of where they are in arbitration now. It's 2,000 plus. That motion was never ruled on, never heard, never granted. That motion was made in state court? That motion was made in state court, yes, sir. But it was never ruled on. We got up and went on appeal before it got ruled on, and the Court of Appeals reversed, and they didn't go any further with the case. So when we come back down, the Carlsons go to. So what you have is there was no indication whatsoever from the plaintiffs, and certainly no claim and no evidence, that they were going to try to do class arbitration because they didn't want to do arbitration at all. When they went before the trial court, in fact, and this is kind of an odd situation they're in, they were raising arbitrability questions to the trial court and to the Court of Appeals. They were implicitly taking a position that arbitrability questions go to the court, and one of those was unconscionability. They were saying the arbitration agreement was unconscionable as a whole and therefore throw it out. That's a classic arbitrability question, and they asked the court to decide it, and the court rejected it. The trial court didn't rule on it because he ruled strictly on waiver. They argued an additional sustaining grant on appeal to the Court of Appeals, and the Court of Appeals rejected it on its merits and then sent it back down. So Judge Diaz, what I'm trying to make clear here, there's no indication of any class arbitration stuff going on at this time. This was all state law. I misspoke. I meant class actions. At least there was notice that they intended to proceed as a class. They had amended their complaint, and that had been granted for a class of about 140 homes. That was all that was pending at the time. They had, and if you want to say they'd given notice, my red light's on, they made a motion but it never got heard, never got granted to add 2,000. Thank you, Your Honor. Seekings. If it pleases the Court, my name is Mike Seekings, along with Philip Segee. We represent the Carlson & Carlson line of plaintiffs in this action. I'd like to sort of start at the very beginning and trace how we got before Your Honors. I think somewhere along the line there's a serious question about jurisdiction, and that's this. This is a state court action that was commenced in state court where Pulte, Del Webb, the defendants, plaintiffs here, but the defendants there moved for arbitration under an arbitration agreement, which Mr. Widener tells you is a standard arbitration agreement. I would take issue with that, and I would ask you to look very closely at the arbitration agreement in this case because it's a bifurcated arbitration agreement. It has an arbitration agreement that's a pre-closing arbitration agreement which talks to the party's rights before they actually go buy a home. Then there's a post-closing arbitration agreement, which is far more broad and takes out some of the language in the pre-arbitration agreement. It's a very broad and tailored arbitration agreement that is found throughout all of the plaintiffs, all the homeowners. This is a Sun City project where there's over 5,000 homes. So if you bought a house directly from Pulte and you qualify as one of the people who can live there,  there's a contract that everybody signs of sale that has a bifurcated arbitration provision. So that arbitration provision was part and parcel of what happened in the state court. There was a parallel case called Grazia that were going along. Judge Baxley had all these cases together, and there was a motion made to send the Carlson cases, the Carlson line of cases, which had been pled your honor as a class action, moved to send them to arbitration. We resisted it. And you might ask, why now are you sitting up here arguing for an arbitration that you resisted? These are plaintiffs that by definition, by deed, by record deed, have to be at a minimum 55 years old to even live at Sun City. Many of these people are much older. The underlying Grazia case was well along the way, and there was every indication if Judge Baxley found that there was waiver, which he did, that the Carlson case and the Grazia case would be merged and we'd be way down the road. We're not. We're here. The Court of Appeals in South Carolina ruled under the arbitration agreement that was drafted by Pulte that these cases were to go to arbitration in state court. Now, by state court, and that's important because the arbitration agreement that you're considering today specifically references two things, South Carolina law and the South Carolina Arbitration Act. Pulte asked for that arbitration, and off we went, and we filed it, and we filed it just as it was filed in state court, just as they had argued to the Court of Appeals as a class. And I've gone to research this, and I think this is unscientific, but in the first time in the history of American jurisprudence, Pulte is now seeking to stop the very arbitration that it fought for five years in state court to have held. There has been no change. The case was brought as a class in state court. It is still a class as it goes forward to arbitration pursuant to a state court order. But the class hadn't been certified, right? That is correct. The only thing that's happened is we filed our notice of arbitration. There is an arbitrator. We've had several hearings, and under the current supplemental rules for the American Arbitration Association, there's a four-pronged, four-step process. We've gone through steps one and two. One is the clause construction, and two is the clause construction portion. That's part and parcel of the record before you. The clause construction award by the arbitrator is in there, and I would ask that you all take a look at that because he goes through and analyzes the manner by which we got there. There is no question here by the appellant that this is the question of arbitrability or is this matter arbitrable, and, again, it's the matter that they asked for. So how do we get to federal court? We've gone through state court. We've gone to the Court of Appeals. The Court of Appeals has ruled arbitration. We go to arbitration. We have a number of hearings. All of a sudden appears a pleading in federal district court called the petition under rule section 4 of the Federal Arbitration Act for basically an advisory opinion from the district court that what's going on in arbitration is contrary to the Federal Arbitration Act, federal law, the Supreme Court, and anything else in the world because we, Pulte, never asked for this. Well, a couple of things I'd like to say about that. If you look at the Federal Arbitration Act and then you match it up with the cases that Pulte has cited to this court, they don't match because the action that was brought in the district court was under section 4 of the Federal Arbitration Act. Section 4 of the Federal Arbitration Act, if you look, is very specific. It looks to people who are grieved when people will not arbitrate. That's not the case here. We're arbitrating. We want to continue to arbitrate. We believe we have a right to arbitrate. With one exception, from the Supreme Court on down, the cases that come to courts such as yourselves are under section 10 of the Federal Arbitration Act when something has gone beyond what is allowable under that act. We are not even there yet. We have, as you know, questioned whether or not there's jurisdiction here. And we did. Judge Blatt as well, he found that there was. But you seem to be making a different argument here today about section 4 whereas before, I mean, the jurisdictional issue was premised on lack of diversity jurisdiction and the like. Well, actually, Your Honor, one of the things we argued very clearly is the Federal Arbitration Act does not create an independent cause of action. And there's no dispute about that. And it doesn't, and there's a number of reasons why. One of which is, again, it goes back to section 4, and you go and read it very specifically. Section 4 contemplates anything has to have, you have to have all the underlying pieces of jurisdiction which don't exist here, and you have to be aggrieved that there is non-arbitration. And that's, we believe, jurisdictional. So you go beyond that and look at section 10, which is a post-arbitration review. That's a whole separate matter. Now, I did hear my learned colleague reference the Fourth Circuit and what the Fourth Circuit has done. And you see what Judge Blatt did is he went back, he analyzed what was before him, he reached this on the merits. And he said, based on my reading of Basil, and then one of an unpublished decision, but he cited it, that's why it's in our brief, this court has gone and said, look, one of the things you look to is, is there an arbitration agreement? If there's an arbitration agreement and people are arbitrating, off you go. And I would quote, there's a few of them, but Doxer v. Schwartzberg, which is also cited in both briefs, what this court has said is, a court should intervene only when there is a question regarding whether the parties should be arbitrating at all. Well, there's no question about that. Then you might want to get to the next question. If you think they survived through the Federal Arbitration Act, what about, is this a matter, initially a matter of expectation and consent? Is it a matter of arbitrability? Look how we got here. Look at all of the things that have happened along the way and never, ever, until we're at stage two of the arbitration proceedings, was there ever a question about the arbitration proceeding being proper in its form? And that is all of us just being able to plead, to plead at the arbitration level a class action. It has not been certified. It has not been certified. Interestingly, the parallel case to this case, which is in state court, which is reported in the South Carolina Reporter and cited in our brief, Grazia v. South Carolina State Plastering, the question was, the threshold question that was asked there by the defendants was can you even plead a class action in South Carolina in a single family house case because of the right to cure action? And the court said, of course you can plead it. We believe here the same thing. We can plead it. We have plead it, and we have consistently plead it. So going back and saying that this is a review of a standard arbitration agreement, it's not. It's a bifurcated arbitration agreement which separates what's going on, and the second portion of it. How is that relevant to the issue? Because the second portion of the arbitration agreement between the parties is much broader. It's much broader. It's a simple language. It refers to all causes of action. It does not limit itself, does not limit itself to the sale of the house, and it references both South Carolina law and the South Carolina Arbitration Act. So that brings us back to sort of the beginning of all this. How does that get you to a consent to classified arbitration? Well, here's the answer to that. This, of course, is a matter purely in the first instance of contract, and you're, as a court, if you get the merits of this, go back and look at what the contract, what was considered in the contract was agreed to by the parties, and here there's a difference between the first arbitration agreement and the second. The second is much more inclusive. The activity and actions that go forward from then along the way, Pulte has never, ever, ever said you can't pursue this claim like you're pursuing it in arbitration. They've said we want it arbitrated. The manner in which you're pursuing it. If you look at Docket Entry 32, Exhibit 4, they say every claim that is pled in the state court Carlson case is something that is subject to arbitration. Class was pled, and so we're beyond arbitrability now, and we're into the form of that arbitration, which Pulte itself has, from the very beginning, acceded to until we got into the arbitration proceedings. Then come back under Section 4 of the Federal Arbitration Act in federal district court and say we want to put a halt to it. I just believe, Your Honor, as you look at the record before you, Pulte has never, ever, ever, as a matter of contract and contract right and a disappointed party to that contract who drafted it said that this has gone beyond the scope of our contract, ever. Say that again. That they've never said that these proceedings are going beyond the scope of our agreement. Just the opposite. They said we want these proceedings to fit into the scope of our agreement, and that is everything. Everything. And that second portion of that arbitration agreement that they drafted referencing how it'll work, where it'll work, and what law, we have every right to rely on that. And so South Carolina applies, the South Carolina Arbitration Act applies, and the class that we pled survives. Again, I would, and I know you're going to look at this at two levels, but how we get from there to this court, you have to jump through a lot of procedural hoops and jurisdictional hoops to get there, and we don't think they make it. We don't think they make it, and we argue that they don't because of how they've done it. They simply just filed a pleading that said, okay, under the FAA, let's go. Section four. I don't believe that gives the court enough once they've gone and contractually bound themselves to the South Carolina Arbitration Act and South Carolina law in an arbitration that they've asked for to change the game in the middle to a procedural move in federal court where there is no underlying independent jurisdiction, which there isn't because if you're looking under FAA section... Let me display my ignorance just a second. Sorry. Was this jurisdictional argument made before Judge Block? Yes, sir. Not once, but twice, and he ruled I've got jurisdiction. He didn't give a written opinion. If you go look at the record, he just simply said... Is that ruling in the record? Simply, he says, if you look at his written order, he says, I just find that I have jurisdiction, and he had to be there that day, and he did not make a written order specifically stating the basis for his jurisdiction. He didn't do that. But we have argued at every corner when we've gone before him that we don't believe you have jurisdiction, and if you look, again, at the record with the transcript that's in there the second time we went back before him, we continue to argue that, and we continue to argue that, and we, of course, as you know, can raise it at any time, but we're not trying to surprise anybody here. We've never thought that, that there's been any jurisdiction in this case and still continue to believe that there's not. So here we are. If you get past that jurisdictional question, the question is what did Pulte contract for? What are their reasonable expectations of the contract? Now they're going to say, well, we didn't really expect any of this. Well, they expected all of it, and they asked for all of it, and they spent an enormous amount of time and money pursuing it to the detriment of our clients who are in this arbitration with him and down the road in the arbitration. Basel and its line of cases clearly fits, and if you go back and look, and I think Oxford Health, Judge Kagan at the end says, look, once you get the question of arbitration and arbitrability and you ask for it, that's what you get. What happens down the road happens down the road, and here they ask for it in the form that it's gone. We didn't change anything. We didn't change a thing in terms of the form of this case. The only thing that changed was the venue in which it proceeded because Pulte asked for it. We didn't. Again, it was for reasons of time more than anything, but now we're there, but now we're there. So I would ask this Court in the last few seconds that I have to go and take a look at what happened procedurally. Does the Federal Arbitration Act and specifically Section 4 confer jurisdiction? Did they meet jurisdictional requirements to even be here before you? I certainly wish Judge Blatt had written an order as to how he found jurisdiction. He didn't. That, I believe, now... Well, is there diversity between these parties? Well, Your Honor, the answer is, as between who sits at this table and that table, yes. The question is, how, though, did this case get there and what case is it that has gone up in terms of diversity? If this is an original pleading, if it's an original pleading, then they've asked for an advisory opinion and they don't meet jurisdictional minimums. If this is a pleading that comes from the State court case, there is no diversity if you just go look at the caption of that State court case, because South Carolina State plastering and an individual are named in that pleading. So it's not completely clear. And CAFA is not... And we may hear about that in rebuttal and I'll sit down. CAFA's not implicated because, just so you know, there's another case coming right behind us. We're heading for you all again because there was an attempt to remove the Carlson case in Buford State Court to Judge Blatt, and he dismissed that as an improper removal of a case that doesn't exist because it's an arbitration. And we're heading for you on that one too. They're not consolidated, and we've got one in between. But for purposes of this... Now I know why Saul decided to retire. Yes, sir. It wasn't all those years on the bench, it's these six months with us. So my time is up, but I just want to make the point, if you go look at, Your Honor, look at the Federal Arbitration Act and you look at what happened with this contract and what this contract says, this is a matter of State court, of State pleading, of State proceeding, of State law, that was pursued by Pulte in State court. They won at the Court of Appeals. We're in arbitration. All we've done is plead class, hasn't been certified, and now they want this court to intervene. You made a comment about... that suggested that those who are age 55 or older may be living on borrowed time. I hope that wasn't reflected. No, sir, and I actually meet that requirement as well. Generally, the people who live in Pulte, including the Carlsons, are over the age of 80, so... Well, Judge Blatt might take offense to that, too. He's well aware of the makeup of the plaintiffs in this case and has commented a good number on it. So thank you for your time today, and we'd ask you that you send this back to arbitration where it belongs. Thank you. Thank you, Mr. Widener. Thank you, Your Honor. We do agree on one thing. This should go back to arbitration where it belongs, and it should go back to bilateral arbitration, which is where it belongs. And then we'll talk about how we got here. I'll tell you how we got here, how this whole dirty road that they've discussed started. They brought a state court action when the contract said arbitration. They brought a state court action in their own name only when their contract said arbitration. And if they had brought the arbitration claim in their own name, this case would have been over five years ago. That's not what happened. Now, they say in his arguments, most of it was about jurisdiction. I'll get to that if you want to. He says the South Carolina Court of Appeals sent back these cases. That's not what the South Carolina Court of Appeals did. The South Carolina Court of Appeals sent back the Carlson case, their individual claim. The captions, just look at the captions, and captions are a big deal in South Carolina because they have a statute about them. The caption on our motion was against the Carlsons, not in your representative capacity. The trial court's order was against the Carlsons, nothing about in your representative capacity. The Court of Appeals' opinion was against the Carlsons, not anything about your representative capacity. But if you look at the body of the opinion from the Court of Appeals, it makes it even clearer. When the trial judge found us guilty of waiver, it was based on this. The plaintiffs put in this laundry list of stuff, apparently prepared by a paralegal, and said these are all the things you did that constitute waiver. I spent hours looking through this list, because it didn't tell you which case. What happened is all of these things, virtually every single one of them, was something that happened in one of the other 104 cases that were still pending as an individual case. And that's what he was relying on to say we waived. The Court of Appeals said those other cases, the class that was alleged at the time, are irrelevant to the issue before us. The question is what did they do in the Carlson case? They didn't do anything in the Carlson case that waived it, so you compel arbitration. To me that makes it crystal clear that the South Carolina Court of Appeals did not view this as it had anything to do with class arbitration. I argued that case. I wrote the briefs in the case. Class arbitration was never an issue in the Court of Appeals, nor could it be, because the class had not been certified. Now they say they came back and the arbitration was the same thing as they filed in state court. Again, that's just false. The only thing that had been filed in state court was the 140 class. They filed their 2,000 class complaint as an exhibit to their filed motion to amend, which was never heard, never granted. So when the Court of Appeals sent the Carlsons, and just the Carlsons, because that's the only people that the Court of Appeals had jurisdiction over, to arbitration, that's when the Carlsons added the 2,000. They could have come in and just done their own case and we wouldn't be here. We're here because of the class allegations. That's what this case is about. It's not about the Carlsons. It's about the class. We filed our petition with the district court before there was any hearings before the arbitrator. They seem to say that we didn't start this until afterwards. From the very first moment that we got to arbitration and we saw that they were trying to do a class arbitration, we objected over and over again. And the record clearly reflects that. This wasn't some, oh, he's ruled against us on the construction award, let's run to the federal court. That's not what happened. We had a conference. They said this is what we're going to do. We filed our petition two days later before any hearing before the arbitrator. We consistently objected to the arbitrator. You shouldn't be hearing this until the district court rules. We have never argued that a class claim was being compelled to arbitration. They seem to say that we've made that argument. That's what we asked for. That's simply not true. Every stage of this case, we have said, you Carlsons and just you, because that's the only people who are before us right now, go to arbitration per your agreement. We have fought for years for arbitration. That's true, but it's for bilateral arbitration. The South Carolina Arbitration Act, they talk about that. That's a procedural act. It looks a lot like the FAA if you compare the two, but it has no pronouncement in there that has anything to do with the issue before this court, which is who decides this question. Who decides whether or not this arbitration agreement allows class arbitration? That's the only question before the court. And what provision of the FAA gives the district court the authority to decide that? Because the Supreme Court has held all of this is a matter of agreement, and the FAA provision that you have to do it by agreement preempts state law. But it's not so much jurisdiction. The FAA is kind of an odd bird. Because the plaintiffs focused on Section 4, which talks about a refusal to arbitrate as the basis for your claim in the district court. But you're saying it goes beyond that. Well, it was a Section 4 petition to get rid of the stuff about class allegations. But the jurisdictional basis for getting to the district court wasn't the Federal Arbitration Act. They've done this over and over again. We have never argued the FAA gave the district court jurisdiction, because that would be The FAA is kind of an odd bird. It has federal law that preempts state law, but it doesn't give you federal question jurisdiction. Our jurisdiction has always been diversity. Diversity over the Carlsons themselves, because it's more than $75,000. There's complete diversity, as you said, between the tables. And CAFA, because it's more than $5 million. And there's complete diversity between the tables. And CAFA doesn't even require that. And then they try to do this local controversy argument in their brief. But you've got at least one defendant who's diverse, so you don't fit that argument. And then they raise Rooker-Feldman. The Rooker-Feldman argument is so wrong that I don't want to spend too much time on it. They rely heavily on the Friedman case out of this court, which this court overruled and said, you know, when Rooker-Feldman first came out, courts took a broad view and kind of viewed it like a race judicata mechanism. And that's really what they're trying to argue here, is there's some sort of race judicata mechanism that we could have. But what Rooker-Feldman says, and the Supreme Court came out in Exxon Mobil and said, that's not what it means. And this court came out in Devaney and said, that's not what it means. And Friedman is no longer good law. And that knocks out their argument all by itself. We weren't a state court loser, which is what this court has, says it has. We won. They keep saying we didn't, but we did. We won. And we won on one issue. The Carlsons have to go back to arbitration. It had nothing to do with class arbitration in the state court proceeding about the motion to compel. That was aimed solely at the Carlsons. And that's all I have, Your Honor, unless the court has some other questions. Thank you, Your Honor. Thank you, Mr. Wyden.
judges: William B. Traxler, Jr., Roger L. Gregory, Albert Diaz